DONALD W. SEARLES (Cal. Bar No. 135705)
Email: searlesd@sec.gov
JUNLING MA (Cal. Bar No. 213241)
Email: maj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Gary Y. Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>QUANTA, INC., ARTHUR MIKAELIAN, and GRANT MIKAELIAN,<br><br>Defendants. | Case No. 2:23-cv-03683<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), 20(e) 20(g)(1) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(1), 77t(g)(1), 77t(e) & 77v(a)], and Sections 21(d), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. §§ 78u(d), 78u(e) & 78aa(a)].

2.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national

securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa(a)], because the Defendants reside in and/or transact business in this district and certain of the transactions, practices, and courses of business constituting violations of the federal securities laws occurred within this district.

## SUMMARY

4. This action involves disclosure and financial fraud by Quanta, Inc. ("Quanta"), its chief executive officer Arthur Mikaelian ("Mikaelian"), and its executive vice president Grant Mikaelian.

5. Quanta is a biopharmaceutical company that develops and sells Escozine, a product derived from the venom of scorpions.

6. First, in a press release dated June 23, 2021, Quanta and Mikaelian materially misrepresented the U.S. Food and Drug Administration's ("FDA") response to its proposed clinical trial of Escozine as a COVID-19 treatment.

7. Second, in Quanta's Form 10-Q for the first quarter of 2021, Quanta improperly recognized over 60% of its quarterly revenue based on a single, end-of-quarter purchase order, for product that was never shipped or paid for, based on backdated documents created by Grant Mikaelian, which were provided to Quanta's auditors in an attempt to support Quanta's improper recognition of revenue. Mikaelian reviewed, approved and signed Quanta's Form 10-Q for the first quarter of 2021 that included the materially misstated financial statements, and falsely represented to Quanta's auditors in a management representation letter that such financial statements, which included the improperly recognized revenue from the purported end-of-quarter transaction, complied with generally accepted accounting principles ("GAAP").

8. By engaging in this conduct, Defendants violated and/or aided and

abetted violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and l3a-13 promulgated thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-l, and 240.13a-13], Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)], Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1], Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14], and Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

9. The Commission seeks permanent injunctions against Defendants for the violations of the federal securities laws described above, as well as civil penalties, an officer and director bar, and a penny stock bar against Mikaelian and Grant Mikaelian.

## THE DEFENDANTS

10. **Quanta, Inc.** ("Quanta") is a Nevada corporation located in Burbank, California. Quanta's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act. Unsolicited quotations for Quanta's common stock are quoted on OTC Link operated by OTC Markets Group Inc.

11. **Arthur Mikaelian** ("Mikaelian"), age 62, resides in Glendale, California. He has been Quanta's CEO and a director since January 2021. He also signed Quanta's 2021 Forms 10-Q as Quanta's principal accounting officer.

12. **Grant Mikaelian**, age 30, currently resides in the Dominican Republic. He is Mikaelian's son and has been Quanta's executive vice president and treasurer since January 2021.

A. **Background**

13. Mikaelian claims to be a pioneer of polarization technology, which, according to Mikaelian's public statements, "applies advances in quantum biology to increase the potency of active ingredients."

3

14. Using his polarization technology, Mikaelian claims to have developed Escozine, a product derived from the venom of a specific species of scorpion in the Dominican Republic.

15. Prior to the events at issue in this action, Mikaelian had been selling an oral solution of Escozine as a dietary supplement and homeopathic remedy through Medolife Corporation ("Medolife").

16. After Mikaelian became Quanta's CEO in January 2021, Quanta started to sell Mikaelian's Escozine-related products, and issued numerous press releases touting, among other things, Medolife's clinical trial of Escozine in the Dominican Republic as a remedy for cancer and Covid-19.

**B.   Quanta Materially Misrepresented the FDA's Responses to Medolife's Escozine Submission**

17. In April 2020, Mikaelian, through Medolife, submitted a proposal under the FDA's Coronavirus Treatment Acceleration Program for a clinical trial of Escozine in COVID-19 patients.

18. Several days later, the FDA's staff informed Medolife that a preliminary review of the submission had "identified missing information that precludes a substantive evaluation of your clinical research proposal."

19. Thereafter, Medolife twice submitted additional information in response to the FDA staff's comments.

20. Medolife's submissions included its Dominican Republic clinical trial results.

21. On May 27, 2021, the FDA's staff sent Medolife a letter, addressed to Mikaelian, identifying significant deficiencies in Medolife's proposed clinical trial of Escozine, noting that "you do not have adequate nonclinical or clinical support for your proposed trial."

22. Specifically, with respect to the information regarding the Dominican Republic clinical trial, the letter stated that it was "limited by small sample size, lack

of controlled data, and lack of clarity in the dose of escozine administered" and, as such, "cannot be directly leveraged to support your proposed clinical trial."

23. The FDA's staff also noted that Medolife's proposed *future* COVID-19 trial was designed to be a proof-of-concept trial and that antiviral activity "has not been demonstrated with your specific product, escozine…."

24. The FDA staff's letter also asked that Medolife provide additional information about multiple other critical areas, including nonclinical studies, explaining that "[a]dditional nonclinical studies will be necessary to support the safety of escozine prior to clinical trials in human subjects."

25. On June 23, 2021, Quanta issued a press release in which it and Mikaelian knowingly made numerous materially misleading representations regarding the FDA staff's response to Medolife's submission.

26. The title of the press release falsely stated that the "FDA Accepts COVID-19 Clinical Study …." when, in fact, the FDA had not accepted Medolife's clinical trial proposal.

27. Throughout the press release, Quanta and Mikaelian repeatedly misrepresented the FDA's response to its submission, stating, for example, that:

- "The [FDA's] response validated the Company's clinical study conducted in the Dominican Republic (DR)…"

- "The [FDA's] response included recognition from the FDA on the therapeutic effects of Escozine®, validation of the Company's [Dominican Republic] clinical trial as an informal proof-of-concept study…"

- "The acknowledgement by the FDA of the clinical trial conducted in the DR [Dominican Republic] as a proof-of-concept for Escozine®'s therapeutic potential as a COVID-19 therapeutic is an important aspect of the [FDA's] response."

- "[T]he FDA recognized the potential therapeutic benefits of the drug, alluding to its ability to fight the COVID-19 virus, another important

aspect of the [FDA's] response."

28. These specific false and materially misleading statements render the entire press release materially misleading, as it gave the reader the impression that the FDA was very positive about Medolife's proposal and the results of its clinical trials in the Dominican Republic.

29. For example, Mikaelian stated in the press release that "[w]e could not be more pleased with the response from the FDA, in its acknowledgment of our clinical trials on Escozine and its potential therapeutic benefit.…"

30. In subsequent filings with the Commission, Quanta and Mikaelian repeated the misleading statement that the FDA validated or acknowledged Quanta's clinical trial as an informal proof-of-concept study.

31. Those filings included Quanta's quarterly reports on Forms 10-Q for the second and third quarter of 2021 and the first quarter of 2022, and its annual report on Form 10-K for fiscal year 2021.

32. Mikaelian drafted, reviewed and approved Quanta's June 23, 2021 press release and reviewed, approved and signed each of Quanta's filings referenced in paragraph 31 above.

C. **Quanta's Inflated Revenue for the First Quarter of 2021**

33. In its Form 10-Q for the first quarter of 2021, filed on May 25, 2021, Quanta reported total revenue of $326,623, including $198,800 from the sale of Escozine immunapen to an overseas company owned and controlled by Mikaelian's half-brother ("Company A").

34. The purported purchase order for that $198,000 sale was dated March 31, 2021, the last day of Quanta's first quarter for fiscal year 2021.

35. According to Quanta's revenue recognition policy as disclosed in its Form 10-Q for the first quarter of 2021, "[p]roduct revenue and costs of sales are recognized when control of the products transfers to our customer, which generally occurs upon shipment from our facilities."

6

36. The revenue from the purported sale of Escozine immunapen was reported in Quanta's financial statements included in its first quarter Form 10-Q filed with the Commission.

37. On May 20, 2021, Grant Mikaelian created the purchase order that reflected the $198,000 sale.

38. As both Mikaelian and Grant Mikaelian knew, Escozine immunapen had not been shipped to Company A, or paid for, on or before March 31, 2021.

39. In fact, there was never any shipment of the product because Company A did not have a license to import the product.

40. During the interim review for the first quarter of 2021, Quanta's auditor learned about the purported end-of-quarter related party sale to Company A and began making inquiries about that transaction on or about May 18, 2021.

41. Quanta's outside accountant provided Quanta's auditor with a copy of the March 31, 2021 purchase order on May 21, 2021, one day after it was created by Grant Mikaelian, together with an invoice of the same date (March 31, 2021), which was also backdated.

42. In connection with Quanta's auditor's 2021 interim reviews, Mikaelian signed a management representation letter for the first quarter of 2021, in which he falsely represented that Quanta's financials were prepared in accordance with GAAP.

43. On May 25, 2021, Quanta filed its Form 10-Q for the first quarter of 2021, which ended on March 31, 2021.

44. Mikaelian signed and certified Quanta's Form 10-Q for the first quarter of 2021, which included the $198,000 fabricated revenue for the quarter.

45. Mikaelian also signed and certified Quanta's periodic reports filed with the Commission for the second and third quarters of 2021 and fiscal year 2021 that included Quanta's fabricated first quarter 2021 revenue, including signing and certifying Quanta's quarterly financials as Quanta's principal accounting officer.

46. The fabricated revenue caused Quanta to inflate its total revenue for the

first quarter of 2021 by 61% and gross profit by 65%, which also materially impacted subsequent reporting periods.

47. Quanta did not retain its auditors for the year end 2021 audit and filed its Form 10-K for 2021 on April 15, 2022 with unaudited financial statements.

48. Shortly thereafter, Quanta's auditors resigned and withdrew its consent of the interim financial statements for the first three quarters of 2021.

49. Nevertheless, Quanta filed a Form 10-Q for the first quarter of 2022 on May 23, 2022 without any outside auditor review.

50. Quanta stopped filing any periodic reports with the Commission after filing the deficient Form 10-Q for the first quarter of 2022.

51. To date, Quanta has not filed a restatement correcting the errors and irregularities in its quarterly and annual reports caused by its improper recognition of revenue based on the purported March 31, 2021 purchase order between Quanta and Company A.

52. Contemporaneous with Quanta's false and misleading disclosures about the FDA's response to its submission, and the reporting of its first quarter 2021 revenues, Quanta, on June 21, 2021, filed an initial Regulation A offering statement (which was never qualified).

53. Also, during the relevant period, Quanta received money and property from selling convertible notes from June to August 2021.

## FIRST CLAIM FOR RELIEF

**Fraud In The Offer Or Sale Of Securities**

**Violations of Section 17(a) of the Securities Act**

**(Section 17(a) Against Quanta; Section 17(a) (1) and (3) Against Mikaelian; Aiding and Abetting as to Grant Mikaelian)**

54. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

55. Defendant Quanta, by engaging in the conduct described above, directly

or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a.    with scienter, employed devices, schemes, or artifices to defraud;

    b.    obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

56. Defendant Mikaelian, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud; and knowingly, recklessly or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

57. Defendant Grant Mikaelian, by engaging in the conduct described above, knowingly provided substantial assistance in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)] to Quanta's and Mikaelian's violation of Section 17(a) of the Securities Act.

58. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, and/or aid and abet violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**Fraud In Connection With The Purchase Or Sale Of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

**(Against Quanta and Mikaelian; Aiding and Abetting as to Grant Mikaelian)**

59. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

60. Defendants Quanta and Mikaelian, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

61. Defendant Grant Mikaelian, by engaging in the conduct described above, knowingly provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Quanta's and Mikaelian's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

62. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, and/or aid and abet violations Section 10(b) of the Exchange Act 15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
#### Issuer Reporting Violations
#### Violations of Section 13(a) of the Exchange Act, and
#### Rules 12b-20, 13a-1, 13a-13
#### (Against Quanta as a primary violator;
#### Aiding and Abetting as to Mikaelian and Grant Mikaelian)

63. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

64. Defendant Quanta, by engaging in the conduct described above, failed to file and/or filed current, quarterly and annual reports with the Commission which

failed to include material information necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

65. Defendant Mikaelian knowingly provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Quanta's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13.

66. Defendant Grant Mikaelian knowingly provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Quanta's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13.

67. By engaging in the conduct described above Defendants violated, and unless restrained and enjoined will continue to violate, and/or aid and abet violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20, 13a-1, 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13].

## FOURTH CLAIM FOR RELIEF

**Failure to Maintain Accurate Books and Records**

**Violations of Section 13(b)(2)(A) of the Exchange Act**

**(Against Quanta as a primary violator;**

**Aiding and Abetting as to Mikaelian and Grant Mikaelian)**

68. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

69. By engaging in the conduct described above, Quanta failed to make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflecting the issuer's transactions and dispositions of its assets.

70. Defendants Mikaelian and Grant Mikaelian knowingly a provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Quanta's violation of Section 13(B)((2)(A).

71. By engaging in the conduct described above Defendants violated, and unless restrained and enjoined will continue to violate, and/or aid and abet violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

# FIFTH CLAIM FOR RELIEF

### Failure to Devise and Maintain Internal Accounting Controls

### Violations of Section 13(b)(2)(B) of the Exchange Act

### (Against Quanta as a primary violator;

### Aiding and Abetting as to Mikaelian and Grant Mikaelian)

72. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

73. By engaging in the conduct described above, Quanta failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences

74. Defendants Mikaelian and Grant Mikaelian knowingly provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Quanta's violation of Section 13(B)((2)(B).

75. By engaging in the conduct described above Defendants violated, and unless restrained and enjoined will continue to violate, and/or aid and abet violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

# SIXTH  CLAIM FOR RELIEF

### Falsification of Books and Records

### Section 13(b)(5) of the Exchange Act and Rule 13b2-1 Thereunder

### (Against Mikaelian and Grant Mikaelian)

76. The Commission realleges and incorporates by reference paragraphs 1

through 53 above.

77. By engaging in the acts and conduct described above, Defendants Mikaelian and Grant Mikaelian falsified and caused to be falsified books, records and accounts that Quanta was required to make and keep, in reasonable detail, to accurately and fairly reflect the issuer's transactions and dispositions of its assets.

78. By engaging in the acts and conduct described above, Defendants Mikaelian and Grant Mikaelian violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], and Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1].

## SEVENTH CLAIM FOR RELIEF

**Misrepresentations To Accountants**

**Exchange Act Rule 13b2-2**

**(Against Defendant Mikaelian; Aiding and Abetting as to Defendant Grant Mikaelian)**

79. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

80. By engaging in the acts and conduct described above, Defendant Mikaelian, directly and indirectly: (1) made or caused to be made a materially false or misleading statement to an accountant in connection with: (i) any audit, review or examination of the financial statements of the issuer required to be made under the federal securities laws; or (ii) the preparation or filing of any document or report required to be filed with the Commission; and (2) omitted to state, or caused another person to omit to state, any material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with: (i) any audit, review or examination of the financial statements of the issuer required to be made under the federal securities laws; or (ii) the preparation or filing of any document or report required to be filed with the Commission.

81. By engaging in the acts and conduct above, Defendant Mikaelian violated Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

82. By engaging in the acts and conduct described above, Defendant Grant Mikaelian knowingly provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Mikaelian's violation of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.

83. Unless restrained and enjoined Defendants Mikaelian and Grant Mikaelian will continue to violate and/or aid and abet violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## EIGHTH CLAIM FOR RELIEF

**False Certification of Annual and Quarterly Reports**

**Exchange Act Rule 13a-14**

**(Against Defendant Mikaelian; Aiding and Abetting as to Defendant Grant Mikaelian)**

84. The Commission realleges and incorporates by reference paragraphs 1 through 53 above.

85. By engaging in the acts and conduct described above, Defendant Mikaelian falsely certified that Quanta's periodic reports complied with GAAP.

86. By engaging in the acts and conduct above, Defendant Mikaelian violated Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

87. By engaging in the acts and conduct described above, Defendant Grant Mikaelian knowingly provided substantial assistance in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] to Mikaelian's violation of Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

88. Unless restrained and enjoined Defendants Mikaelian and Grant Mikaelian will continue to violate and/or aid and abet violations of Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining Defendant Quanta from violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)], and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, and 240. 13a-13].

### III.

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining Defendant Mikaelian from violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5, 13a-14, 13b2-1, and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, and 240.13b2-2], and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

### IV.

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining Defendant Grant Mikaelian from violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5, 13a-14, 13b2-1, and 13b2-2 thereunder  [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, and 240.13b2-2], and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of

the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, and 240. 13a-13].

### V.

Order Defendants Mikaelian and Grant Mikaelian to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### VI.

Order that Mikaelian and Grant Mikaelian be barred from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

### VII.

Order that Defendants Mikaelian and Grant Mikaelian be barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)] and Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A).

### VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**IX.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: May 15, 2023

/s/ *Donald W. Searles*
DONALD W. SEARLES
Attorney for Plaintiff
Securities and Exchange Commission